IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZACHARY FRIDLINE, | No. 4:23-CV-00656 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| MILLENNIA TAX RELIEF, LLC, | |
| Defendant. | |

**MEMORANDUM OPINION**

**MARCH 29, 2024**

## I. BACKGROUND

This case was initially filed by Plaintiff, Zachary Fridline, against Defendant, Millennia Tax Relief, LLC ("Millennia Tax"), on April 20, 2023.[1] For the past eleven months, Defendant has failed to appear before this Court at all. Plaintiff moved for entry of default on June 9, 2023,[2] and default was subsequently entered by the Clerk of Court on June 12, 2023.[3] Then, Plaintiff moved for default judgment on February 13, 2024.[4] Still, Defendant has refused to respond, and therefore the motion is now ripe for disposition. For the reasons that follow, the motion is granted in part and denied in part.

---

[1] *See* Doc. 1 (Compl.).
[2] *See* Doc. 7 (Request for Entry of Default).
[3] *See* Doc. 8 (Clerk's Entry of Default).
[4] *See* Doc. 9 (Motion for Default Judgment).

## II.    DISCUSSION

### A.    Default Judgment is Warranted

Federal Rule of Civil Procedure 55 allows the District Court to enter default judgment upon application by a party.[5] "Generally, the entry of a default judgment is disfavored, and a court is required to exercise sound judicial discretion in deciding whether to enter default judgment."[6] "This element of discretion makes it clear that the party making the request is not entitled to a default judgment as of right, even when defendant is technically in default and that fact has been noted under Rule 55(a)."[7] It is "well settled that decisions relating to default judgments are committed to the sound discretion of the district court."[8]

The Court must consider three factors in deciding whether to grant default judgment: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."[9] "But when a defendant has failed to appear or respond in any fashion to the complaint, this analysis is necessarily one-sided; entry of default judgment is typically appropriate in such circumstances at least until the defendant

---

[5] FED. R. CIV. P. 55(b)(2).
[6] *Kibbie v. BP/Citibank*, No. 3:CV-08-1804, 2010 WL 2573845, at *2 (M.D. Pa. June 23, 2010) (Vanaskie, J.).
[7] 10A Charles Alan Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 2685 (Apr. 2020 Update).
[8] *Pesotski v. Summa & Lezzi, Inc.*, No. 1:17-cv-00221, 2017 WL 3310951, at *2 (M.D. Pa. Aug. 3, 2017) (Kane, J.).
[9] *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

comes forward with a motion to set aside the default judgment under Rule 55(c)."[10] In cases where a defendant fails to appear, this Court may enter default judgment "based solely on the fact that the default has occurred."[11]

The Court nevertheless considers those factors for the sake of completeness; in this case, they favor the grant of default judgment. First, Plaintiff would be prejudiced by his "current inability to proceed with [his] action due to Defendant['s] failure to defend."[12] Defendant's decision not to appear before this Court would otherwise prevent Plaintiff from recovering any damages for his claim. Similarly, the second factor points in favor of the grant of default judgment. "Defendant has not responded to the allegations and, thereby, has failed to assert a defense."[13] Finally, there does not appear to be any excuse for Defendant's failure to appear or otherwise respond to Plaintiff's complaint. Plaintiff submitted an executed summons indicating that service of process occurred on April 21, 2023.[14] Having received service, Defendant has yet to respond or appear in this action. Because Defendant has offered no explanation for its failure to engage in the litigation, the Court finds that Defendant is culpable.[15] Therefore, default judgment is appropriate in these circumstances.

---

[10] *Deutsche Bank Nat. Trust Co. v. Strunz*, Civ. No. 1:12-cv-01678, 2013 WL 122644, at *1 (M.D. Pa. Jan. 9, 2013) (Kane, J.).
[11] *Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990).
[12] *Broad. Music, Inc. v. Kujo Long, LLC*, No. 1:14-cv-00449, 2014 WL 4059711, at *2 (M.D. Pa. Aug. 14, 2014) (Kane, J.).
[13] *Pesotski*, 2017 WL 3310951, at *3.
[14] *See* Doc. 4 (Executed Summons).
[15] *See Laborers Local Union 158 v. Shaffer*, Civ. No. 1:CV-10-1524, 2011 WL 1397107 (M.D. Pa. Apr. 13, 2011).

A finding that default judgment is warranted, however, "is not the end of the inquiry."[16] First, the Court must consider whether the "unchallenged facts constitute a legitimate cause of action."[17] Although the defaulting party does not concede conclusions of law, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."[18] Plaintiff's complaint asserts two claims under the Telephone Consumer Protection Act ("TCPA"). The Court now considers whether the allegations in the complaint, taken as true, state claims under the TCPA.

### B. The Facts Alleged in the Complaint

Zachary Fridline is a resident of Northumberland, Pennsylvania; Millennia Tax is a "marketing company that purports to offer consumers assistance with tax debt."[19] Fridline owned a cell phone that he used for "primarily residential purposes."[20] Plaintiff previously registered this number on the National Do Not Call Registry ("DNC Registry") in September 2005.[21]

Fridline did not have any "outstanding tax liability" and therefore "would not have knowingly or willfully opted in to receiving telemarketing calls about any tax

---

[16] *Martin v. Nat'l Check Recovery Servs., LLC*, Civ. No. 1:12-CV-1230, 2016 WL 3670849, at *1 (M.D. Pa. July 11, 2016).
[17] *Broad Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F. Supp.2d 537, 541 (E.D. Pa. 2008).
[18] *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).
[19] Doc. 1 (Compl.) ¶¶ 5-6.
[20] *Id.* ¶¶ 16-17.
[21] *See id.* ¶ 18.

4

relief."[22] Despite this, Plaintiff began to receive calls from Millennia Tax in November 2021 "soliciting tax relief."[23] These voice calls used "an automatically generated and/or pre-re corded voice" and "pre-recorded messages."[24] This "message was generic, rather than specifically tailored to Plaintiff, and was non-interactive and robotic."[25]

Defendant placed "at least" four voice calls and two text messages to Fridline soliciting tax relief.[26] "[A]t least two of the voice calls contained pre-recorded messages, purported to offer a 'fresh start' on tax liability" from a number "attributable to Millennia" Tax.[27] The first phone call occurred on November 8, 2021.[28] After that, Fridline received no contact from Defendant until he received two unsolicited text messages in late February 2022.[29] These texts stated that Millennia Tax's records "indicate[d] [Plaintiff] have a outstanding tax liability and" encouraged Fridline to call a listed phone number.[30]

Finally, Plaintiff received two phone calls in May 2022.[31] At least one of these calls left Fridline a "'ringless' voicemail that deliver[ed] a prerecorded message to

---

[22]   *Id.* ¶ 20.
[23]   *Id.* ¶ 21.
[24]   *Id.* ¶ 23.
[25]   *Id.* ¶ 24.
[26]   *Id.* ¶ 29.
[27]   *Id.* ¶ 34.
[28]   *See id.* ¶ 30.
[29]   These text messages were received on February 24, 2022 and February 25, 2022. *See id.*
[30]   *Id.* ¶ 33.
[31]   *See id.* ¶ 30.

[his] voice mailbox."[32] To do so, "callers dial the same number, from two phones almost instantaneously" to cause "the latter-dialed call to terminate directly in the recipient's voicemail."[33] The Federal Communications Commission ("FCC") classifies "ringless voicemails" as "calls made using an artificial or prerecorded voice" subject to the TCPA.[34] Plaintiff concludes that these calls "were not made for 'emergency purposes'" and that he found this unwanted telemarketing solicitation to be "annoying, frustrating, upsetting, harassing, and an invasion of his privacy."[35]

In Count I, it is alleged that "Defendant's calls to Plaintiff … were without Plaintiff's prior consent" and that Millennia Tax "contacted Plaintiff … despite the fact that [his] telephone number[]" was on the DNC Registry.[36] In Count II, it is alleged that Defendant "knew or should have known that Plaintiff … had [his] number[] registered on" the DNC Registry and that Millennia Tax again "did not obtain valid express written consent from" Plaintiff.[37]

### C. Plaintiff's Claims

Fridline brings a claim under both Section 227(b) and Section 227(c) of the TCPA. Each of these claims is analyzed below.

---

[32] *Id.* ¶ 25.
[33] *Id.* ¶ 26.
[34] *Id.* ¶ 27.
[35] *Id.* ¶ 36.
[36] *Id.* ¶¶ 54, 56.
[37] *Id.* ¶¶ 64-65.

6

### 1.   Section 227(b) Violations

Under Section 227(b)(1)(A)(iii) of the TCPA, it is "unlawful for any person … to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) … using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service … unless such call is made solely to collect a debt owed or guaranteed by the United States."[38]

Section 227(b) provides a private cause of action.[39] "To state a cause of action under [Section 227(b) of] the TCPA, a plaintiff must allege: '(1) the defendant called a cellular telephone number; (2) using an [automatic telephone dialing system or an artificial or prerecorded voice]; (3) without the recipient's prior express consent.'"[40] The FCC has determined that a "ringless voicemail" to "wireless phones requires consumer consent because it is a 'call' made using an artificial or prerecorded voice and thus is covered by [S]ection 227(b)(1)(A)(iii)" of the TCPA.[41]

The complaint clearly identifies two voice calls Defendant placed to his cell phone using a pre-recorded voice, and Plaintiff provided supplemental information

---

[38] 47 U.S.C. § 227(b)(1)(A)(iii).
[39] *See* 47 U.S.C. § 227(b)(3).
[40] *Zemel v. CSC Holdings LLC*, Civ. A. No. 18-2340-BRM-DEA, 2018 U.S. Dist. LEXIS 201917, at *7 (D.N.J. Nov. 29, 2018) (quoting *Martinez v. TD Bank USA*, No. 15-7712, 2017 U.S. Dist. LEXIS 101979, at *4 (D.N.J. 2017)).
[41] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Declaratory Ruling and Order, 37 FCC Rcd 13675 (15) para. 1 (F.C.C. 2022).

concerning a third pre-recorded voice call that runs aground of Section 227(b).[42] Given that it is alleged that Millennia Tax lacked Plaintiff's express consent, he has sufficiently demonstrated three violations of Section 227(b) of the TCPA.

### 2.     Section 227(c) Violations

To establish a violation of Section 227(c) of the TCPA, Fridline must show that he (1) "receive[d] multiple calls within twelve months, (2) by or on behalf of the same entity, (3) on a residential phone registered on the" DNC Registry.[43] The first two elements are easily shown: Plaintiff received seven calls in a twelve month period on behalf of Millennia Tax.[44] As to the requirement that the calls be placed to a "residential phone registered on the" DNC Registry, Plaintiff has indicated that his cell phone[45] has been registered since September 2005.[46] Consequently, Fridline has asserted seven violations of Section 227(c).

---

[42]   *See* Doc. 1 (Compl.) ¶ 34; Doc. 10 (Brief in Support of Motion for Default Judgment), Ex. 1 (Fridline Decl.) ¶¶ 10, 12.
[43]   *Smith v. Vision Solar LLC*, Civ. A. No. 20-2185, 2020 U.S. Dist. LEXIS 172224, at *8 (E.D. Pa. Sept. 21, 2020) (citing *Huber v. Pro Custom Solar, LLC*, No. 3:19-cv-01090, 2020 U.S. Dist. LEXIS 87025, at *2 (M.D. Pa. May 18, 2020)).
[44]   *See* Doc. 1 (Compl.) ¶¶ 29-33.
[45]   The Court considers Plaintiff's cell phone to qualify as a "residential telephone subscriber" as defined by the TCPA. *See e.g.*, *Jackson v. Direct Bldg. Supplies, LLC*, No. 4:23-CV-01569, 2024 U.S. Dist. LEXIS 8811 (M.D. Pa. Jan. 17, 2024) (providing an in-depth analysis of why cell phones qualify as "residential telephone subscribers" for purposes of the DNC Registry.).
[46]   *See* Doc. 1 (Compl.) ¶ 18.

### D.     Damages

Having found that Plaintiff has stated legitimate causes of action, the Court now considers damages. Fridline is entitled to recover $15,000 for ten willful or knowing violations of the TCPA.

#### 1.     Number of Violations that Occurred

First, it must be determined how many communications Plaintiff is able to recover on. Federal Rule of Civil Procedure 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." "The purpose of Rule 54(c)'s limitation on default judgments 'is that a defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action.'"[47]

In the pleadings, Plaintiff identified six unsolicited communications from Millennia Tax in a "non-exhaustive" list.[48] By indicating that this list of unsolicited communications was "non-exhaustive," Plaintiff put Defendant on notice that it could face additional liability beyond these six calls.[49] Consequently, I will consider all

---

[47] *Pogan v. M/V Venture Pride*, Civ. No. 2015-14, 2017 U.S. Dist. LEXIS 45064, at *5 (D.V.I. Mar. 28, 2018) (quoting *Silge v. Merz*, 510 F.3d 157, 159-62 (2d Cir. 2007)).
[48] Doc. 1 (Compl.) ¶ 30.
[49] The Court notes that this is especially true given that the Complaint also included allegations to support a class action. *See* Doc. 1 (Compl.) ¶¶ 37-49. *See also CMA CGM S.A. v. Biomass Pro Inc.*, Civ. A. No. 19-13647, 2022 U.S. Dist. LEXIS 125552, at *11 n. 4 (D.N.J. July 14, 2022) ("Although Plaintiffs listed the then-current damages at $2,162,039 in the complaint, they also put Defendants on notice that '[a]dditional charges continue to accrue in accordance with the terms of said tariffs'… Accordingly, awarding more than the $2,162,039 set forth in the complaint is consistent with [Federal Rule of Civil Procedure] 54(c).").

seven phone calls identified by Fridline when determining how many TCPA violations occurred.

### 2. Multiple Violations Per Call

Next, the Court acknowledges that Plaintiff is entitled to recover for multiple violations from a single call under the present circumstances.[50] Statutory damages provide for $500 per violation of Section 227(b) and Section 227(c) or, if the violations were willful or knowing as determined by the Court, up to $1,500 per violation as treble damages.[51]

### 3. Willful or Knowing Defined

"A willful or knowing violation encompasses conduct that goes beyond the elements a plaintiff must allege to state a claim for actual or baseline statutory damages, or for injunctive relief."[52] "'[T]he [Court of Appeals for the] Third Circuit has not yet addressed the [meaning of the] willful or knowing requirement [under the TCPA].'"[53] But district courts in this Circuit "'have required more than a mere showing that the transmission of a [call] was itself intentional to warrant treble

---

[50] *See e.g.*, *Cunningham v. Capital Advance Sols., LLC*, Civ. A. No. 17-13050 (FLW), 2019 U.S. Dist. LEXIS 222355, at *5 n.4 (D.N.J. Dec. 30, 2019) ("The Court notes that, although the [Court of Appeals for the] Third Circuit has not had the occasion to address this issue, the Sixth Circuit and district courts within this Circuit have concluded that a claimant is entitled to recover damages under separate subparts of the TCPA, even if the alleged violations arose from the same telephone call.").

[51] *See* 47 U.S.C. § 227(b)(3); 47 U.S.C. § 227(c)(5).

[52] *Arcieri v. Suntuity Solar LTd. Liab. Co.*, Civ. A. No. 20-16292 (FLW), 2021 U.S. Dist. LEXIS 186205, at *24 (D.N.J. Sept. 27, 2021).

[53] *Id.* at *25 (quoting *Zelma v. Penn LLC*, Civ. No. 19-8725, 2020 U.S. Dist. LEXIS 9615 at *6 (D.N.J. Jan. 17, 2020)).

damages.'"[54] For example, with a focus on a "knowing" violation, I have previously concluded that a plaintiff stated a claim for treble damages when it was alleged that the "defendant knew it did not have the plaintiff's prior express consent, knew it was using an artificial or prerecorded voice, and otherwise knew that its conduct violated the TCPA."[55] A willful violation encompasses knowing, intentional, or reckless conduct.[56]

### 4. Section 227(b) Violations – Willful or Knowing Determination

Plaintiff never "provide[d] the express written consent the TCPA requires" for Millennia Tax to contact him and, in fact, had placed his number on the DNC Registry.[57] "[A]t least [three] of the [five] voice calls "contained pre-recorded messages, purported to offer a 'fresh start' on tax liability from the 800-449-8910 number that is attributable to" Defendant.[58] Further, Millennia Tax had "placed prerecorded voice calls to hundreds[,] if not thousands[,] of telephone numbers."[59] These allegations sufficiently establish three willful or knowing violations of Section 227(b) by Millennia Tax, and Plaintiff is entitled to $4,500 in damages for these violations.[60]

---

[54] *Id.*
[55] *Id.* (citing *Kline v. United Northern Mortg. Bankers Ltd.*, No. 4:18-CV-00489, 2018 U.S. Dist. LEXIS 157816, at *2 (M.D. Pa. Sept. 17, 2018).
[56] *Id.* at *26-27.
[57] Doc. 1 (Compl.) ¶¶ 22, 56.
[58] *Id.* ¶ 34; Doc. 10 (Brief in Support of Motion for Default Judgment), Ex. 1 (Fridline Decl.) ¶ 12.
[59] *Id.* ¶ 55.
[60] The third violation comes from the supplemental information provided to the Court in support of the Motion for Default Judgment. Plaintiff identified a third "ringless voicemail"

### 5. Section 227(c) Violations – Willful or Knowing Determination

Defendant "knew or should have known that Plaintiff … had [his] number[] registered on the" DNC Registry and that it "did not obtain valid express written consent from" Fridline to contact him.[61] These allegations sufficiently entitle Plaintiff to treble damages for the Section 227(c) violations as Millennia Tax willfully or knowingly violated this part of the TCPA. Therefore, Fridline shall receive $10,500 for the seven Section 227(c) violations.

## III. CONCLUSION

Plaintiff has adequately alleged three willful or knowing violations of Section 227(b) of the TCPA and seven willful or knowing violations of Section 227(c) of the TCPA. Consequently, Fridline is entitled to recover $15,000 in damages from Defendant. This figure represents $4,500 for the Section 227(b) violations and $10,500 for the Section 227(c) violations.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

that occurred on August 18, 2022 from Millennial Tax. *See* Doc. 10 (Brief in Support of Motion for Default Judgment), Ex. 1 (Fridline Decl.) ¶¶ 10, 12. As already discussed above, Plaintiff can recover for this additional violation.

[61] Doc. 1 (Compl.) ¶¶ 64-65.